UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

LEEANN HARPER,

        PLAINTIFF,

V.                               CIVIL ACTION NO. _____

EDWARD ANTHONY ZIMBARDI, RAMON
GEMPERLE, CHRISTOPHER LIVINGSTON
AND DOE DEFENDANTS 1–10,

        DEFENDANTS.
_____/

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
(RICO, Securities Fraud, Common Law Fraud, and Related Claims)

## I.      INTRODUCTION

Plaintiff LeeAnn Harper brings this action against Defendants Edward Zimbardi, Ramon Gemperle, Christopher Livingston, and their co-conspirators for orchestrating and operating a cryptocurrency-based Ponzi scheme under the guise of an advertising arbitrage business known as the "CryptoProgram" a/k/a CryptoProgram, Crypto Program, Amsys.io, and AdMediaSpend.io. Through a calculated campaign of false representations, omissions, and fraudulent inducements, Defendants unlawfully obtained over $366,000 USD of Plaintiff's funds—most of which was never returned. Defendants falsely promised guaranteed monthly returns of 25%, claimed investor funds were safe and exclusively used for online advertising, and concealed the true nature of the scheme, which was in fact dependent on the flow of new investor capital to pay earlier participants. Plaintiff seeks to recover her losses and hold Defendants accountable for violations of federal and Georgia law, including the Racketeer Influenced and Corrupt Organizations Act (RICO), federal and state securities fraud statutes, and multiple

common law torts, and seeks injunctive and equitable relief to prevent the continued dissipation of misappropriated assets.

## II.     PARTIES

1. Plaintiff LeeAnn Harper is a natural person and citizen of Canada, residing in British Columbia, Canada. At all times relevant to this Complaint, Plaintiff was a self-employed internet marketer and a victim in the scheme described herein.

2. Defendant Edward Anthony Zimbardi is a natural person and, upon information and belief, a citizen and resident of the State of Georgia. At all relevant times, Zimbardi orchestrated and promoted the scheme described herein through various fraudulent entities including the "Crypto Program," and held himself out as its "Master Affiliate." He may be served at a residential or business address to be determined through discovery or investigative efforts.

3. Upon information and belief, Defendant Edward Zimbardi intends to flee from United States to Fiji or another foreign jurisdiction within the next few days.

4. Defendant Ramon Gemperle is a natural person and, upon information and belief, a citizen of either Canada or Switzerland, who regularly communicated with U.S.-based participants in the Crypto Program via social media and messaging applications. At all relevant times, Gemperle actively recruited investors into the scheme and participated in its operations.

5. Defendant Christopher Livingston is a natural person whose exact residence is unknown but who, upon information and belief, participated in the management and marketing of the fraudulent enterprise through social media platforms including Facebook. His specific role, aliases, and affiliations will be further revealed in discovery.

6. Plaintiff alleges, upon information and belief, that other individuals and entities—known and unknown—conspired with the above-named Defendants and participated in the scheme described herein. Plaintiff reserves the right to amend this Complaint to include additional parties as discovery progresses.

### III.    JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff asserts claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

8. This Court also has supplemental jurisdiction over Plaintiff's state-law claims—including fraud, negligent misrepresentation, conversion, unjust enrichment, and violations of the Georgia Uniform Securities Act (O.C.G.A. § 10-5-50 et seq.)—pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy under Article III of the U.S. Constitution.

9. This Court has personal jurisdiction over Defendant Edward Zimbardi, who resides in Georgia and committed acts in furtherance of the fraudulent scheme while physically present in the State. Defendant Zimbardi directed, orchestrated, and profited from a national and transnational scheme targeting investors—including Plaintiff—using instrumentalities of interstate commerce, including internet websites and U.S.-based financial platforms.

10. To the extent any other Defendant resides outside the United States, this Court may exercise jurisdiction over those foreign Defendants pursuant to Fed. R. Civ. P. 4(k)(2) (the federal long-arm statute), as they directed unlawful conduct as employees or agents

of U.S.-based companies located within the State of Georgia, used U.S.-based payment systems, and purposefully availed themselves of U.S. markets.

### IV.    VENUE

10. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (2) because:

a. At least one Defendant (Zimbardi) resides in this District;

b. A substantial part of the events or omissions giving rise to the claims occurred in this District; and

c. The enterprise that carried out the fraudulent scheme was managed, in whole or in part, from this District.

11. Venue is also proper under 18 U.S.C. § 1965(a) and § 1965(b) (RICO), as one or more Defendants reside, are found, have agents, or transact affairs in this District, and because the ends of justice require that other parties residing outside Georgia be brought before the Court.

### V.    FACTUAL ALLEGATIONS

12. Plaintiff LeeAnn Harper is a Canadian citizen residing in British Columbia, Canada.

13. Between May 30, 2023, and August 20, 2023, Ms. Harper was fraudulently induced to invest approximately $366,305 USD into what she was led to believe were legitimate cryptocurrency-based "media packages" offered by a business calling itself the "Crypto Program," as well as by related entities operating under the names "Amsys.io" and "Ad Media Spend."

14. The scheme was orchestrated and operated by Edward Anthony Zimbardi, a citizen of the State of Georgia and self-proclaimed "Master Affiliate" of Crypto Program.

15. Zimbardi, together with others acting in concert, including Ramon Gemperle and Christopher Livingston, perpetrated a sophisticated international Ponzi scheme that used digital asset wallets, social media communications, and unregistered websites to solicit funds from unsuspecting investors, including Plaintiff.

16. Zimbardi, who has a prior felony conviction for theft and a history of promoting fraudulent investment schemes, positioned himself as the public face of Crypto Program, appearing in online videos and presentations where he falsely claimed the program generated "25% monthly returns" through online advertising arbitrage, not trading.

17. Defendant Zimbardi and his cohorts marketed the program as "very low risk," "sustainable," and "not a Ponzi scheme."

18. In reliance on repeated assurances and materially false representations by Defendants Zimbardi, Gemperle, Clarke, and others, in May of 2023 Plaintiff began investing in the Crypto Program by transferring fiat currency through her banking institutions and cryptocurrency exchanges, including Shakepay and Exodus, eventually remitting USDT to wallets controlled by Defendants.

19. Defendants represented to investors, including the Plaintiff, that their investments would be used exclusively for purchasing media advertising, not trading, and that her principal investment could be withdrawn at any time. These representations were false.

20. As determined by the California Department of Financial Protection and Innovation, the Crypto Program in fact operated as a Ponzi scheme, using new investor funds to pay earlier investors and diverting other funds to offshore forex and CFD trading accounts— activities not disclosed to investors, including Plaintiff. *See* Exhibit A.

21. Over the course of the fraud, Plaintiff received a total of $103,330 USD in purported returns, resulting in a net financial loss of $262,975 USD.

22. The initial returns were used as bait to extract larger investments, a hallmark tactic of fraudulent investment operations.

23. Defendants created a veneer of legitimacy by presenting fake dashboards, fabricated company websites (e.g., www.cryptoprogram.me, www.amsys.io, www.admediaspend.io), and organized social media and WhatsApp group communications encouraging Plaintiff and others to recruit further participants, thereby entrenching the scheme's multi-level marketing aspects.

24. Communications from Defendants continued even after payouts ceased in August 2023, during which time Plaintiff and other victims were falsely told that funds were safe and that a relaunch would occur in "90 to 120 days." No relaunch occurred, and no further payments were made.

25. Defendants' actions constitute a coordinated effort to defraud Plaintiff and others out of millions dollars, and involve multiple acts of wire fraud, theft, misrepresentation, and racketeering activity, as further alleged in the causes of action set forth below.

## VI.    CAUSES OF ACTION

### COUNT ONE
**Violation of the Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. §§ 1962(c) and 1962(d) – Civil RICO**
*(Against All Defendants)*

26. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 23 above as if fully set forth herein.

27. This claim for relief arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and specifically §§ 1962(c) and (d). Plaintiff seeks all relief afforded by 18 U.S.C. § 1964.

28. At all relevant times, Defendants Edward Anthony Zimbardi, Ramon Gemperle, Christopher Livingston, and other individuals presently unknown (collectively, "Defendants"), constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4), namely, a group of individuals associated in fact, engaged in and affecting interstate and foreign commerce.

29. The Crypto Program enterprise was an ongoing organization whose members functioned as a continuing unit with the common purpose of soliciting and misappropriating funds from victims under false pretenses through the use of wire communications and the internet.

30. Defendants employed a pattern of racketeering activity involving repeated violations of the following federal statutes:

    a) 18 U.S.C. § 1343 (Wire Fraud): Defendants, through use of interstate wire communications—including websites, social media, email, and messaging platforms—devised and participated in a scheme to defraud Plaintiff and other investors by misrepresenting the nature, safety, and use of funds in the Crypto Program and related entities.

    b) 18 U.S.C. § 2314 (Transportation of Stolen Money): Defendants knowingly caused the transportation, transmission, and transfer in interstate and foreign commerce of funds obtained by fraud and theft.

c) 18 U.S.C. § 1956 (Money Laundering): Upon information and belief, Defendants conducted financial transactions, including the conversion of fiat funds to cryptocurrency, for the purpose of concealing and disguising the nature, location, source, ownership, and control of the proceeds of their fraudulent scheme.

31. Defendants engaged in at least two acts of racketeering activity within a 10-year period, and such acts were related and continuous, constituting a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).

32. As part of their racketeering scheme, Defendants falsely represented that the Crypto Program was a legitimate advertising-based investment opportunity offering 25% monthly returns with low risk. In truth, as determined by the California Department of Financial Protection and Innovation, the Crypto Program was a Ponzi scheme that used new investor funds to pay prior investors and diverted funds to undisclosed offshore trading operations.

33. Defendants further advanced their scheme by creating and maintaining fraudulent websites (including www.cryptoprogram.me and www.amsys.io), issuing fabricated reports and communications, forming social media and WhatsApp groups to manipulate victims and obscure the scheme, and using multi-level marketing tactics to expand the pool of defrauded individuals.

34. Plaintiff was induced to invest a total of $366,305.00 USD based on Defendants' materially false statements and omissions. She ultimately suffered a net loss of $262,975.00 USD after receiving limited and strategically timed "payouts" designed to perpetuate the scheme.

35. As a direct and proximate result of Defendants' racketeering conduct, Plaintiff has suffered damages in excess of $262,975.00, exclusive of interest, attorneys' fees, and costs, all of which are recoverable under 18 U.S.C. § 1964(c).

36. Pursuant to 18 U.S.C. § 1962(d), Defendants further conspired to violate § 1962(c). They knowingly agreed and intended to participate in the Crypto Program enterprise through a pattern of racketeering activity, and each played an active role in its operation and promotion.

37. Plaintiff is entitled to recover treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c), and hereby demands the same.

### COUNT TWO
### Common Law Fraud
### *(Against All Defendants)*

38. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. This cause of action is brought under Georgia common law for fraud. The material misrepresentations made to Plaintiff were deliberate, false, and designed to induce her investment in what Defendants labeled the "Crypto Program."

40. Between approximately March and August 2023, Defendants Edward Anthony Zimbardi, Ramon Gemperle, Christopher Livingston, and others associated with the Crypto Program enterprise made numerous false statements of material fact to Plaintiff, both directly and through intermediaries, via phone calls, emails, website materials, messaging applications, video presentations, social media communications and marketing materials.

41. Specifically, Defendants falsely represented to Plaintiff that:

a. Her investment would be used solely to fund online media advertising, not for cryptocurrency trading or speculative activity;

b. Her investment would yield a fixed 25% monthly return, a fraudulent statement repeated by Defendants and advertised in multiple marketing materials.

c. She could withdraw her initial investment at any time;

d. The Crypto Program had operated successfully for 15 years with consistent triple-digit monthly returns;

e. The program was "very low risk" and "sustainable" because it did not rely on market volatility;

f. Defendant Zimbardi had no ownership interest in the Crypto Program and was merely a "Master Affiliate" acting independently;

g. The Crypto Program was legitimate, lawfully operated, and not a Ponzi scheme.

42. Each of these representations was knowingly false when made. For example:

- The California Department of Financial Protection and Innovation later found that Crypto Program operated in the manner of a Ponzi scheme, using new investor funds to pay prior investors, and misappropriating funds for offshore forex and CFD trading, contrary to the representations made to Plaintiff.

- Zimbardi, contrary to his public assurances, had a prior felony conviction for theft, had previously filed for bankruptcy, and had promoted other fraudulent schemes that resulted in substantial investor losses.

43. Defendants also made material omissions, including:

a. Failing to disclose that Crypto Program was not licensed, registered, or authorized to sell securities or offer investments;

  b. Failing to disclose the use of investor funds for personal enrichment and unrelated high-risk trading;

  c. Failing to disclose that prior investors were paid with new investor funds, consistent with a classic Ponzi structure.

44. Defendants made these misrepresentations and omissions with the intent to induce Plaintiff to invest substantial funds, and in fact, repeatedly encouraged her to increase her investment, which she ultimately did—transferring more than $366,305.00 USD through cryptocurrency wallets controlled or accessed by Defendants.

45. Plaintiff reasonably relied on these false statements. She had never previously engaged in cryptocurrency arbitrage or digital asset investments and relied on the representations of her longtime acquaintance Darren Clarke, as well as the materials and instructions provided by Defendants and their agents, including websites, Zoom calls, PowerPoint presentations, WhatsApp messages, and one-on-one communications.

46. Defendants cultivated an illusion of legitimacy through fabricated dashboards, staged returns, and a coordinated effort to create social proof and pressure through Telegram, WhatsApp, and Facebook groups, all of which reinforced the original fraudulent statements and created a false sense of security and community.

47. Plaintiff's reliance was not only reasonable—it was foreseeable. Defendants crafted their entire scheme to appear trustworthy to lay investors and exploited social relationships and digital communications to establish credibility.

48. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered a net loss of $262,975.00 USD, exclusive of interest, attorney's fees, and the costs of pursuing this action.

49. Defendants acted with actual malice, willful misconduct, and conscious indifference to the consequences of their conduct, thereby justifying an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

50. Plaintiff is also entitled to recover compensatory damages, costs, and any other relief the Court deems just and proper.

**COUNT THREE**
**Fraudulent Misrepresentation**
*(Against All Defendants)*

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. This cause of action is brought under Georgia law for fraudulent misrepresentation, which requires proof of: (1) a false representation made by the defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages directly resulting from such reliance.

53. Beginning in or around March 2023 and continuing through August 2023, Defendants Edward Zimbardi, Ramon Gemperle, Christopher Livingston, and others operating in concert, made multiple affirmative, material misrepresentations to Plaintiff in order to induce her to invest in the so-called "Crypto Program" and associated entities, including "Amsys.io" and "Ad Media Spend."

54. The false statements were communicated directly to Plaintiff via telephone, email, text, social media, video conferences, and web-based presentations, including but not limited to:

- Representations that Plaintiff's investments would be used solely to fund online media advertising campaigns;

- Representations that investors would receive guaranteed 25% monthly returns;

- Representations that the investment funds would not be used for any speculative trading activity;

- Representations that Plaintiff could withdraw her principal investment at any time;

- Representations that the Crypto Program had been operating successfully for over 15 years and was "very sustainable" and "low risk";

- Representations that Zimbardi was merely a third-party "Master Affiliate" with no operational or financial control over the program;

- Representations that the individuals managing Crypto Program were experienced professionals, though their identities were never disclosed.

55. Each of these statements was knowingly false at the time it was made. Defendants knew that:

- Investor funds were not limited to online advertising, but were used to pay off earlier investors in a Ponzi-style distribution;

- Funds were funneled into offshore forex trading accounts, despite representations to the contrary;

- There was no longstanding legitimate business operation, and the Crypto Program had not been legally operating for 15 years;

- The program was never registered with any securities authority in any jurisdiction, nor were the investments qualified or exempt under applicable law.

56. The California Department of Financial Protection and Innovation has since confirmed, via a public Desist and Refrain Order, that Crypto Program operated as an unregistered

securities offering and Ponzi scheme, and that Zimbardi actively made false representations to investors regarding the use of funds, associated risks, and the legitimacy of the enterprise.

57. Defendants made these false representations intentionally and with the specific purpose of inducing Plaintiff to invest funds in the scheme, and to continue investing even after initial payouts were made.

58. Plaintiff reasonably and justifiably relied on these misrepresentations. She had limited experience with cryptocurrency and online advertising models, and was introduced to the investment by a trusted acquaintance who had himself been misled by Defendants. The professional marketing materials, orchestrated group chats, staged investment dashboards, and recurring small "return" payments further reinforced the misrepresentations and were designed to—and did—induce continued reliance.

59. As a direct and proximate result of her reliance on Defendants' fraudulent misrepresentations, Plaintiff transferred approximately $366,305.00 USD in funds and ultimately suffered a net loss of $262,975.00 USD, excluding interest, litigation costs, and attorneys' fees.

60. Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages under O.C.G.A. § 51-12-5.1.

61. Plaintiff is also entitled to recover compensatory damages in an amount to be determined at trial, along with the costs of this action and any further relief the Court deems just and proper.

## COUNT FOUR
### Securities Fraud – Violation of Section 10(b) of the
### Securities Exchange Act of 1934 and Rule 10b-5
### *(Against All Defendants)*

62. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. This cause of action arises under Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, which make it unlawful for any person, in connection with the purchase or sale of any security, to:

64. Employ any device, scheme, or artifice to defraud;

65. Make any untrue statement of a material fact or omit to state a material fact necessary to make the statements made not misleading; or

66. Engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person.

67. Plaintiff purchased securities in the form of so-called "media packages" through Crypto Program, Amsys.io, and Ad Media Spend. These "packages," as structured and marketed by Defendants, constitute investment contracts and are thus "securities" under the meaning of 15 U.S.C. § 78c(a)(10) . Each investor:

    1. Invested money;

    2. In a common enterprise;

    3. With an expectation of profits;

    4. Solely from the efforts of others.

68. Defendants Edward Zimbardi, Ramon Gemperle, Christopher Livingston, and others made material misrepresentations and omissions in connection with the offer and sale of these securities, including:

a.  Falsely representing that the investment proceeds would be used exclusively for purchasing online media advertising;

b.  Falsely representing a guaranteed 25% monthly return on all media packages;

c.  Falsely stating that the Crypto Program was low risk and had operated successfully for 15 years;

d.  Failing to disclose that Crypto Program was unregistered and operating illegally;

e.  Failing to disclose that funds were diverted to offshore trading in forex and CFDs with high risk of total loss;

f.  Failing to disclose that investor returns were being paid using funds from new investors—a classic Ponzi scheme.

69. Defendants knew or were severely reckless in not knowing that their statements and omissions were false or misleading. These misrepresentations were made repeatedly through email, Zoom presentations, WhatsApp messages, PowerPoint documents, websites, and direct communications with Plaintiff.

70. The California Department of Financial Protection and Innovation has issued a Desist and Refrain Order confirming that Crypto Program and Zimbardi engaged in illegal securities offerings and committed fraud in violation of state securities law by misleading investors about the source of investment returns and the true use of funds.

71. Plaintiff justifiably relied on the misrepresentations and omissions made by Defendants in deciding to purchase the securities. She had no experience in digital asset investments and relied on Defendants' material statements and the illusion of legitimacy they cultivated.

72. Plaintiff transferred approximately $366,305.00 USD in cryptocurrency investments and has suffered a net loss of $262,975.00 USD, exclusive of attorneys' fees, costs, and interest.

73. Defendants' conduct was willful, knowing, and in violation of the anti-fraud provisions of the federal securities laws. As a direct and proximate result, Plaintiff has suffered economic harm for which she is entitled to recovery under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

74. Plaintiff seeks rescission of the investment contracts, compensatory damages, prejudgment interest, attorneys' fees and costs, and all other relief available under the law.

### COUNT FIVE
### Violation of the Georgia Uniform Securities Act
### O.C.G.A. §§ 10-5-50 and 10-5-58
### *(Against All Defendants)*

75. Plaintiff realleges and incorporates by reference paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. This cause of action arises under the Georgia Uniform Securities Act of 2008 (GUSA), O.C.G.A. § 10-5-1 et seq., specifically under §§ 10-5-50(a)(2) and 10-5-58(a)(2).

77. Between approximately March and August 2023, Defendants Edward Zimbardi, Ramon Gemperle, Christopher Livingston, and others acting in concert with them, knowingly and willfully engaged in the offer and sale of securities in Georgia to Plaintiff and other investors through the entity referred to as the "Crypto Program," as well as affiliated entities "Amsys.io" and "Ad Media Spend."

78. The so-called "media packages" offered by Defendants constitute securities under Georgia law as defined in O.C.G.A. § 10-5-2(31)(A), specifically "investment contracts," which involve:

- An investment of funds,

- In a common enterprise,

- With the expectation of profits,

- Derived substantially from the efforts of others.

79. In connection with the offer and sale of these securities, Defendants violated O.C.G.A. § 10-5-50(a)(2) by:

a. Making untrue statements of material fact; and

b. Omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

80. These material misrepresentations and omissions included, but were not limited to:

- That investor funds would be used exclusively for digital advertising, not for trading;

- That the program guaranteed fixed 25% monthly returns with no risk;

- That the principal investment could be withdrawn at any time;

- That the program had operated successfully for over 15 years;

- That the investment was legally authorized, registered, or otherwise compliant with applicable laws.

81. In truth, as determined by regulatory authorities including the California Department of Financial Protection and Innovation, Defendants operated a Ponzi scheme in which:

- New investor funds were used to pay off prior investors;

- A portion of funds was secretly transferred to offshore forex and CFD trading accounts;

- The representations concerning the safety, legality, and use of investor funds were knowingly false or made with reckless disregard for the truth.

82. Defendants were not registered as broker-dealers or investment advisers with any regulatory authority in Georgia or elsewhere, and the securities they offered were not registered, exempt from registration, or otherwise lawfully qualified for sale in Georgia.

83. Plaintiff reasonably relied on Defendants' material misrepresentations and omissions when she decided to invest over $366,000 USD in these unregistered and fraudulent securities. She ultimately suffered a net financial loss of $262,975 USD, exclusive of attorneys' fees, interest, and the costs of this action.

84. Pursuant to O.C.G.A. § 10-5-58(a)(2), any person who violates § 10-5-50 in connection with the offer or sale of a security is liable to the purchaser for:

- Rescission,

- Interest from the date of purchase,

- Reasonable attorneys' fees, and

- Any other relief the court deems appropriate.

85. Defendants' violations of Georgia securities law were knowing, willful, and in conscious disregard of Plaintiff's rights and the applicable regulatory framework.

86. Plaintiff is entitled to all remedies available under Georgia law, including but not limited to:

- Consideration paid, less the amount of any income received on the security;

- Actual damages;

- Interest at the legal rate of interest from the date of the purchase;

- Costs;

- Reasonable attorneys' fees as determined by the court; and

- Such other and further relief as the Court may deem just and proper.

## COUNT SIX
### Conversion
*(Against All Defendants)*

87. Plaintiff realleges and incorporates by reference paragraphs 1 through 86 as if fully set forth herein.

88. Under Georgia law, conversion is defined as any unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in denial or inconsistent with the owner's rights.

89. Plaintiff had legal ownership and the immediate right to possession of the specific funds she invested in Defendants' Crypto Program and related enterprises.

90. Between May and August 2023, Plaintiff transferred a total of approximately $366,305.00 USD, primarily in the form of traceable cryptocurrency (including ETH and USDT), to digital wallets and platforms under the control of Defendants.

91. Plaintiff made these transfers under the belief, induced by Defendants' misrepresentations, that the funds would be used exclusively for lawful, legitimate advertising purposes and would remain available for withdrawal or return.

92. Instead, Defendants wrongfully assumed control of Plaintiff's funds and used them for unauthorized purposes, including:

- Operating a Ponzi scheme;

- Paying earlier investors;

- Funding offshore forex and CFD trading;

- Personally enriching themselves and their associates.

93. Despite Plaintiff's demands and expectations for return or repayment, Defendants have retained control over these funds and have failed to account for or return the majority of her investment.

94. This unauthorized retention and use of Plaintiff's specific, identifiable property constitutes conversion under Georgia law.

95. As a direct and proximate result of Defendants' conversion, Plaintiff suffered financial harm in the amount of $262,975.00, for which she is entitled to compensatory damages, interest, attorneys' fees, and punitive damages due to Defendants' willful misconduct.

**COUNT SEVEN**
**Unjust Enrichment**
***(Against All Defendants)***

96. Plaintiff realleges and incorporates by reference paragraphs 1 through 95 as if fully set forth herein.

97. Under Georgia law, a claim for unjust enrichment arises where:

    i.  the plaintiff confers a benefit on the defendant,

    ii.  the defendant is aware of the benefit, and

    iii.  it would be unjust to allow the defendant to retain that benefit without compensating the plaintiff.

98. Plaintiff conferred a substantial financial benefit on Defendants by transferring over $366,000 in fiat and cryptocurrency directly to them or to entities under their control.

99. Defendants knowingly accepted and retained these funds under false pretenses, including through the promotion of fictitious investment opportunities and fabricated returns.

100.     Defendants did not use the funds for their stated purposes. Rather, they redirected them toward personal gain, offshore investments, and the perpetuation of a fraudulent scheme.

101.     It would be inequitable to permit Defendants to retain the benefit of Plaintiff's investment without restitution, particularly where the transfer of funds was procured through deception and without lawful consideration.

102.     As a result of Defendants' unjust enrichment, Plaintiff is entitled to restitution in the amount of at least $262,975.00 USD, along with interest, costs, and such further relief as this Court deems just and proper.

### VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff LeeAnn Harper respectfully requests that this Court enter judgment in her favor and against Defendants Edward Zimbardi, Ramon Gemperle, Christopher Livingston, and all other persons or entities acting in concert with them, jointly and severally, and grant the following relief:

103.     **On Count I (Federal RICO):**

a. Treble damages pursuant to 18 U.S.C. § 1964(c);

b. Reasonable attorneys' fees and costs of litigation;

c. Equitable relief including asset restraints, constructive trusts, and disgorgement;

104.     **On Counts II & III (Common Law Fraud and Fraudulent Misrepresentation):**

a. Compensatory damages in an amount to be proven at trial;

b. Punitive damages pursuant to O.C.G.A. § 51-12-5.1;

c. Attorneys' fees and litigation costs;

105.    **On Count IV (Negligent Misrepresentation):**

a. Compensatory damages for economic losses proximately caused by Defendants'

conduct;

b. Costs of suit;

106.    **On Count V (Federal Securities Fraud – 10b-5 / § 17(a)):**

a. Rescission and restitution;

b. Compensatory damages;

c. Disgorgement of ill-gotten gains;

d. Prejudgment interest;

e. Reasonable attorneys' fees and costs;

107.    **On Count VI (Georgia Securities Fraud):**

a. Rescission or recovery of the consideration paid for unregistered or fraudulently sold

securities pursuant to O.C.G.A. § 10-5-58;

b. Interest from the date of investment;

c. Attorneys' fees and litigation costs;

108.    **On Count VII (Conversion):**

a. Recovery of the full value of converted property;

b. Punitive damages for willful and malicious misconduct;

c. Costs of suit;

109.    **On Count VIII (Unjust Enrichment):**

a. Restitution of unjustly retained funds in the amount of Plaintiff's net loss;

b. Prejudgment interest;

c. Costs of litigation;

110.      **Equitable and Ancillary Relief:**

a. Imposition of a constructive trust over funds or assets traceable to Plaintiff's

investments;

b. Injunctive relief to prevent further dissipation of fraudulently obtained assets;

c. Any further relief that the Court deems just, equitable, or proper.

### VIII.   DEMAND FOR JURY TRIAL

111.      Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.


Dated: July 25, 2025.

By:

*/s/ Lubin An*
Lubin An (Bar No. 157228)
Lubin An Law LLC
1800 Peachtree St. NW
Suite 300
Atlanta, GA  30309
Telephone:  (404) 247-2030
Lubin@LubinAnLaw.com

-and-

Daniel J. Thornburgh, Esq. (*pro hac vice*
forthcoming)
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449
dthornburgh@awkolaw.com